# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO.: 5:09-CR-00002-TBR

**UNITED STATES OF AMERICA**                                                                 **PLAINTIFF**

**v.**

**DANNY LEE CATHEY**                                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff, United States of America's, Motion in Limine (Docket #35). Defendant, Danny Cathey, has responded (Docket # 36). The Plaintiff has replied (Docket #37). This matter is now ripe for adjudication. For the following reasons Plaintiff's Motion in Limine is GRANTED in part and DENIED in part.

## BACKGROUND

On October 14, 2008, Detective Brett Miller of the Kentucky State Police observed Defendant Danny Lee Cathey sitting in a 4-door silver Hyundai in the parking lot of the Fulton County Kentucky Courthouse. Detective Miller was familiar with Defendant through past law enforcement encounters and Defendant's association with a motorcycle gang. From the vantage point of his own police vehicle, Detective Miller observed Defendant open the trunk of the Hyundai and work on the vehicle's antenna. Detective Miller continued to watch as Defendant closed the trunk, briefly returned to the inside of the vehicle, and popped the hood. At the hood of the vehicle, Defendant held a dipstick in his hand and appeared to check the engine oil level.

Upon closing the hood, Defendant left the vehicle and walked into the courthouse. Detective Miller drove over to Defendant's vehicle, took note of the license plate, and called the police dispatcher twice to discover the registered owner of the vehicle. The dispatcher informed Detective Miller that the license plate was issued for a 1991 red, 2-door Dodge vehicle, and registered to a

known acquaintance of Defendant.

Because Defendant's vehicle was parked and not operating on the roadway, Detective Miller drove to a location away from the courthouse to wait and see whether Defendant would drive the vehicle. Shortly thereafter, Defendant drove the vehicle away from the courthouse. Upon approaching a stop sign, Detective Miller observed Defendant stop, but then drive into the intersection in such a way as to cause another vehicle to make an evasive maneuver to avoid a collision.

Detective Miller followed Defendant in his own vehicle for a short distance until he stopped Defendant at a nearby gas station. Detective Miller observed that Defendant appeared nervous, was perspiring, and had slurred speech. Detective Miller advised Defendant that he stopped him because of the improper license plate and the near collision. Because of Defendant's appearance, Detective Miller told Defendant to step out of the vehicle to perform a field sobriety test.

Hickman Police Chief Grogan and Officer Love arrived to assist Detective Miller. Defendant informed the officers that he could not perform the balance test because he had sustained recent injuries in a motorcycle collision, but he did allow Detective Miller to check his eyes, which did not indicate signs of impairment. Defendant also stated that he was taking Lortab for pain.

Detective Miller asked Defendant why he seemed so nervous and whether he had anything illegal in the vehicle. Defendant replied that he was nervous because he had been stopped and that he did not have anything illegal in the vehicle. Detective Miller asked Defendant if he could search the vehicle. Defendant responded that Detective Miller "could look wherever he wanted to" because Defendant did not have anything to hide. Nothing illegal was found in the search.

Detective Miller then asked Defendant if he could search the trunk. Defendant responded

affirmatively and offered to open the trunk for the officers. Inside the trunk, Detective Miller observed an open 12-pack of Mountain Dew cans. Inside one of the open cans was a bag containing a white crystal substance that appeared to be methamphetamine. Detective Miller told Defendant that he was under arrest for possession of methamphetamine and handcuffed him. Detective Miller searched Defendant and found nine hundred and thirty-seven dollars in cash and a couple of prescription pills in his pants pocket. Detective Miller read Defendant his Miranda rights.

Detective Miller asked Defendant whether there were any more drugs in the vehicle. Defendant responded that he did not know the vehicle contained any drugs. Based on his prior observations at the courthouse, Detective Miller decided to search under the hood of the vehicle. Several items were found under the hood of the vehicle, including thirteen thousand dollars in cash and three large bags containing what appeared to be methamphetamine. Ultimately, Defendant received citations for improper registration and careless driving.

Following his arrest Defendant Cathey was interviewed at the Fulton County Detention Center by Special Agent Thielhorn, from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and Kentucky State Police Detective Miller. No attorney was present for these interviews.

Following the discovery of drug substances in the motor vehicle, a search warrant was obtained for the houseboat owned by Defendant. During the search of the houseboat, ammunition and drug-related notes were seized, as well as some clothing with gang insignia. The notes were found in a pair of jeans.

Defendant has been charged with the knowing possession of methamphetamine with the intent to distribute it. The United States now moves the Court to allow testimony regarding clothing of Defendant found on his houseboat with gang insignia; to hold inadmissible the statement of

Defendant that he was willing to submit to a polygraph; and to hold inadmissible verbal admonitions that were given to Kentucky State Police Detective Miller.

## STANDARD

Under the Federal Rules of Evidence, "[a]ll relevant evidence is admissible" but "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if evidence is relevant it may be excluded "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "District courts are given broad discretion in making a Rule 403 determination." *U.S. v. Bonds*, 12 F.3d 540, 567 (1993). "Unfair prejudice does not mean the damage to a [party]'s case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *Bonds*, 12 F.3d at 567).

## DISCUSSION

### I. Clothing of the Defendant

The United States explains that motorcycle gang clothing was found when law enforcement officers searched Defendant's houseboat. The United States describes the photographs taken of the clothing as depicting a shirt(s) that reads, "Life is not meant to be safe - 81 Kentucky - It is meant to be memorable," and "Support - 81 - Kentucky." There is also a depiction of a character on a motorcycle who appears to be surrounded by flames.

4

The United States requests that it be allowed in its case-in-chief to provide testimony of law enforcement officers that officers found distinctive clothing of Defendant's during the search of the houseboat. The United States asserts that the clothing of Defendant located in the houseboat is probative of Defendant's knowing constructive possession of drug substances. In other words, the United States seeks to establish that Defendant stayed and maintained his personal belongings in the houseboat, where the drug ledger was found.

The Defendant objects to the admissibility of this evidence on two grounds: first, the evidence is not relevant under Federal Rule of Evidence 401 and therefore inadmissible under Federal Rule of Evidence 402; and second, even if relevant, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, misleading the jury, and needless presentation of commutative evidence and is therefore inadmissible under Federal Rule Evidence 403.

As to relevance, the Defendant argues that the Defendant is not charged with conspiracy and the alleged charges are in no way related to membership in a motorcycle gang; therefore, this evidence is irrelevant.  There have been statements made that Defendant had been involved in the Hells Angels motorcycle club in Crutchfield previously.  The United States appears to contend that the clothing evidencing membership in the motorcycle gang is relevant to establishing that Defendant was using the houseboat to maintain personal belongings and therefore he was in constructive possession of the drug ledger.

As to the probative value, the Defendant urges that the danger of unfair prejudice is obvious: "a label that conjures up all sorts of stereotypes which a jury would have difficulty separating between truth and fiction."  The Defendant also asserts that it may cause jury confusion and would

merely be cumulative evidence. The Defendant points to several items of evidence which link Defendant to the houseboat as owner.

There is no dispute that Defendant owns the houseboat. The United States has evidence that Defendant, at least, had been active in a motorcycle gang. Defendant argues the only possible relevance of the clothing could be ownership of the houseboat, which will not be an issue at the trial. Consequently, the Defendant argues the probative value is outweighed by unfair prejudice, jury confusion and commutative evidence.

The Court believes the admissibility of the evidence is best addressed at trial. If the United States believes Defendant has directly placed the issue of ownership, control, or possession of the houseboat and contents in issue, then this evidence could become relevant and the Court can better perform the Federal Rule of Evidence 403 balancing analysis at that time. There may be no dispute that Defendant owns the houseboat, left some items of clothing there, and stayed there from time to time. In any event, the United States will first approach the Court before mentioning or entering this evidence.

**II. Statement of Defendant Concerning Polygraph**

In certain limited circumstances "evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible if it is relevant to the proof developed by the probative evidence." *Wolfel v. Holbrook*, 823 F.2d 970, 973 (6th Cir. 1987) (citing *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir.1985)); *U.S. v. Harris*, 9 F.3d 493, 502 (6th Cir. 1993). The Sixth Circuit has set forth a two part test for determining admissibility: "First, the trial court must determine if the proffered evidence is relevant. Second, if the court concludes that the proffered evidence is relevant, it must balance the probative value of the evidence against the

hazard of unfair prejudice and/or confusion which could mislead the jury."*Wolfel*, 823 F.2d at 973.

The United States argues that the statement of the Defendant as to his willingness to submit to a polygraph would have marginal relevance of credibility and would be confusing to the jury. The United States further argues that because there were no discussions or agreements with regard to the results of the polygraph, the Defendant " did not have the requisite 'adverse interest at stake to cloak his willingness with credibility.'"*Harris*, 9 F.3d at 502 (citations omitted).

The United States cites heavily to *U.S. v. Harris*. 9 F.3d 493 (6th Cir. 1993).  In *Harris*, the court held that a defendant's willingness to submit to a polygraph, when stated in the presence of his attorney is at best marginally relevant to the issue of credibility. *Id.* at 502.  The defendant had not agreed to allow introduction of the results of the polygraph as evidence, regardless of the results. *Id.* Therefore, the court reasoned, he did not have the requisite "adverse interest at stake to cloak his willingness with credibility." *Id.* (citing *Wolfel*, 823 F.2d at 974).

Defendant distinguishes *Harris* from the case at bar and cites to *U.S. v. Hamilton* for admission of the evidence based on lack of attorney presence. 579 F. Supp.2d 637 (D. N.J. 2008). In distinguishing the case at bar from *Harris*, Defendant states that here Agent Thielhorn raised the matter of taking the polygraph and Defendant spontaneously agreed without a lawyer present. Defendant argues the statement is relevant and when balancing the prejudice to the United States the weight is in favor of admitting the evidence.  Defendant asserts there is no inherent prejudice to the United States since Agent Thielhorn asked the question and it is not clear how the statement would be confusing to the jury.

In *United States v. Hamilton*, the court admitted evidence of a defendant's willingness to submit to a polygraph when there was no lawyer present.  579 F. Supp.2d 637 (D. N.J. 2008).  The

7

court reasoned,

> Hamilton's November 11, 2002 interview occurred before he had obtained counsel. Without the presence of counsel, Hamilton had no way of knowing whether or not his offer [to submit to a polygraph] would be accepted nor whether it would be admissible in a future court proceeding. Thus, Hamilton's offer was unencumbered by the usual attorney advice that hinders the admissibility of most such offers. As such, his offer to take a polygraph during the 2002 interview is highly probative of his consciousness of innocence . . . .

*Id.* at 640. Hamilton also sought to admit a statement three years later that he would submit to a polygraph. *Id.* However, the court found this statement inadmissible since Hamilton had likely sought counsel and would know that the results of the polygraph would be inadmissible. *Id.* Defendant asserts his case for admission is even stronger than that in *Hamilton*: Defendant did not offer to submit, but responded yes when asked if he would take a polygraph and had no attorney present.

The United States argues in its reply that Defendant has had counsel periodically for several years so that, although counsel was not present at the time of the statement at issue, the statement is still self serving and lacking the "requisite 'adverse interest to cloak [the] willingness with credibility.'" *Harris*, 9 F.3d at 502 (citations omitted). The United States explains that Defendant had counsel in April 2008, when he plead guilty to a felony, and in October 2007, when he plead guilty another felony. The United States also cites Defendant's additional experience with the criminal justice system. The United States reasons that like the court in *Hamilton*, this Court should infer that because Defendant has had counsel in the past he would know that the results of the polygraph would be inadmissible.

This Court declines to make such an inference. In the case of *Hamilton*, the defendant had the ability to seek counsel on the same charge on which he had previously offered to submit to a

polygraph before the second time he made such an offer. *Hamilton*, 579 F. Supp. 2d at 640. In this case, Defendant may have had counsel previously on different charges; however, there is no evidence he had counsel for the instant charges and no evidence he spoke with an attorney prior to the interview after his arrest. Defendant's prior history with the criminal justice system or prior hiring of an attorney bears little weight if any to the current situation. There was no attorney present and the Court cannot infer Defendant had knowledge that the results of his polygraph test would be inadmissible. Therefore, the statement of willingness is highly probative of Defendant's consciousness of guilt and the Court finds it admissible. As in the case of *Murphy v. Cincinnati Insurance Co.*, the United States will have the ability to present evidence to discount or discredit Defendant's statement of willingness to submit to a polygraph. 772 F.2d 273, 277 (6th Cir. 1985).

Additionally, the United States asserts the statement should be excluded because there was no agreement as to admission of the results of a polygraph. In *Hamilton*, the government argued that because there was no stipulation to a polygraph's admissibility and there was no imminent possibility of a polygraph being taken the statement of willingness to submit should be excluded. 579 F. Supp. 2d at 640. The court rejected these arguments stating that "[t]he Court declines to discredit Hamilton for 'refusing' to stipulate to admissibility of a polygraph test when it is highly unlikely that he even knew he had that option." *Id.* at 641. This Court agrees and finds that lack of discussions or agreements regarding the results of a polygraph does not destroy the relevancy or credibility of the statement. In the case at bar, Agent Thielhorn asked Defendant if he were willing to submit to a polygraph. Defendant asserted he would; however, Agent Thielhorn did not pursue this route. It was not in the hands of Defendant to attempt to stipulate to the admissibility of a hypothetical polygraph offered by a government agent. The statement of Defendant that he was

9

willing to submit to a polygraph is admissible.

### III. Verbal Admonitions of Deceive Miller

The United States also moves to prohibit testimony that Detective Miller had previously been given verbal admonitions explaining a different way to perform his duties. He has never been formally disciplined and none of the verbal incidences concerned this case. Defendant stated he has no objection at this time. The evidence is inadmissible. Defendant shall not mention these admonitions without first approaching the Court.

## CONCLUSION

For the foregoing reasons IT IS HEREBY ORDERED the Plaintiff's Motion in Limine is GRANTED in part and DENIED in part.  Part 1 regarding the clothing of Defendant is DENIED; Part 2 regarding the admission of the statement of willingness to submit to a polygraph is DENIED; Part 3 regarding the verbal admonitions of Kentucky State Police Detective Brett Miller is GRANTED.  Therefore, the admissibility of testimony regarding Defendant's involvement with a motorcycle gang or clothing found with motorcycle gang insignia will be determined at trial; testimony regarding Defendant's willingness to submit to a polygraph is admissible at trial; and testimony regarding verbal admonitions given to Detective Miller is inadmissible at trial.